IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

MICHAEL ANTHONY DIAZ,  §
                       §
        Petitioner,    §
                       §
v.                     §        2:11-CV-0012
                       §
RICK THALER, Director, §
Texas Department of Criminal Justice, §
Correctional Institutions Division, §
                       §
        Respondent.    §

**REPORT AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Came for consideration the Petition for a Writ of Habeas Corpus by a Person in State

Custody filed by petitioner MICHAEL ANTHONY DIAZ.  By his habeas application, petitioner

challenges his October 11, 2007 conviction for the offense of assault on a public servant out of the

222nd Judicial District Court of Deaf Smith County, Texas, and the resultant 25-year sentence.  For

the reasons set forth below, the United States Magistrate Judge is of the opinion petitioner is not

entitled to federal habeas corpus relief.

I.
PROCEDURAL HISTORY

On May 29, 2007, petitioner was arrested for the offense of public intoxication.  While

being processed into jail, he hit a jailer.  As a result, petitioner was indicted on June 27, 2007 for the

felony offense of assault on a public servant, *to wit:*

> Defendant . . . did then and there intentionally, knowingly, or recklessly cause bodily injury to Aurelio Nunez by striking Aurelio Nunez, and the defendant did then and there know that the said Aurelio Nunez was then and there a public servant, to-wit: jailer, and that the said Aurelio Nunez was then and there lawfully discharging an official duty, to-wit: processing the defendant in the Deaf Smith County Jail.

Two (2) enhancement paragraphs were included in the indictment for purposes of enhancing

petitioner's range of punishment to a minimum of twenty-five years.[1]

On July 3, 2007, attorney Ron Spriggs was appointed to represent petitioner in the assault

case.  Trial counsel filed multiple pre-trial motions on petitioner's behalf, including a motion to

disqualify the state trial judge.  After a 2-day hearing, the motion to recuse was denied and the

matter was set for trial October 9. 2007.

> During a pre-trial hearing on October 5, 2007, [petitioner], for the first time, requested that the trial court relieve his appointed attorney.  During a colloquy with the court regarding the dismissal of trial counsel, [petitioner] stated that he had no legal training, though he had studied law a little while in prison.  Ultimately, [petitioner] stated to the trial court that he could not represent himself and the issue of dismissing appellant's trial counsel was resolved.

> On October the 9th, immediately before jury selection was scheduled to begin, [petitioner] again asked to dismiss his trial counsel, however, this time [petitioner] opined that he could represent himself.  During the colloquy that followed, the trial court inquired about the extent of [petitioner's] formal education.  [Petitioner] replied that he went to the 11th grade in school but had completed his GED while in prison.  Further, [petitioner] stated that he studied at Lee College while in prison and was a certified HVAC technician.  [Petitioner] then professed that he knew he was not a paralegal but that he felt he could represent himself better on this case because he knew what happened.  The trial court continued the inquiry by asking [petitioner] if he knew anything about jury voir dire.  [Petitioner] responded that he would talk to the jury about where they worked, if they were prejudiced, and if they had ever served on a jury.  The trial court then advised [petitioner] that there were a number of procedures that would come into play during the trial, such as opening statements, cross-examination of witnesses, and the rules of evidence.  The trial court advised

---

[1]The enhancement paragraphs consisted of a 1987 conviction for the felony offense of burglary of a building, and the 1993 felony offense of DWI.

[petitioner] that these procedural and evidentiary matters take years to master and that he would be at a severe disadvantage.  During this admonition, the trial court advised that he had seen a number of defendants try to represent themselves and, in every case, self-representation turned out to be a disaster for the defendant.  Yet, [petitioner] continued to insist on the right to represent himself.  Finally, the trial court continued to point out the danger of self-representation and the fact that [petitioner] would have to be held to the same standard that a licensed attorney was held to.  The trial court stated that the court could not assist [petitioner] and that he would have to make his own objections and decisions.  [Petitioner] still insisted on representing himself.  Toward the conclusion of the hearing on [petitioner's] right to self-representation, [petitioner] appeared to ask to have his appointed lawyer start the case and, if [petitioner] did not like the job the appointed lawyer was doing, [petitioner] could take over the representation.  The trial court advised [petitioner] that the court could not permit a hybrid representation.  The [petitioner] then stated he was going to represent himself.

The trial court advised he would permit appointed counsel to sit at counsel table as standby attorney, however, he would not be allowed to participate as long as [petitioner] insisted on representing himself.  The jury panel was brought in and voir dire was conducted with [petitioner] conducting his own voir dire.  Opening statements were made with [petitioner] again representing himself during this portion of the trial.  After the State's first witness completed direct examination, [petitioner] attempted to cross-examine the witness, but drew numerous objections from the State.  At this time, [petitioner] requested the trial court to allow standby counsel to take over the representation.  The trial court permitted standby counsel to assume the representation, but admonished [petitioner] that there was to be no further switching back to self-representation.[2]

On October 11, 2007, the jury found petitioner guilty of the offense as alleged in the indictment, found both enhancement paragraphs were true, and assessed petitioner the minimum 25-year sentence.[3]

Petitioner, through the same appointed counsel, directly appealed his conviction and sentence.  On appeal, petitioner alleged 1) he did not effectively waive his constitutional right to counsel, and 2) that the trial court's refusal to allow both he and his counsel to be heard denied him

---

[2]*Diaz v. State*, No. 07-07-0438-CR, slip op. (Tex.App.–Amarillo 2008, pet ref'd).

[3]At both the guilt/innocence and punishment stages of the trial, the jury advised the trial court they were deadlocked and could not make a decision.  The jury reached a verdict on guilt and sentencing only after being administered "*Allen* charges" at each phase of the trial.

his right to assistance of counsel.  On December 29, 2008, the state appellate court affirmed

petitioner's conviction and sentence.  Regarding petitioner's waiver of counsel, the appellate court

held:

> [Petitioner] contends that the trial court erred in allowing appellant to begin the case
> representing himself.  The essence of [petitioner's] argument is that the trial court
> did not properly admonish [petitioner] about the dangers of self-representation and,
> therefore, [petitioner] did not effectively waive his right to counsel.
>
> Initially, we observe that a criminal defendant has a constitutional right to represent
> himself at trial.  However, before allowing a criminal defendant to represent himself,
> the trial court must take certain steps to ensure that the defendant's decision is made
> 1) competently, 2) knowingly and intelligently, and 3) voluntarily.  The law does not
> require that the defendant have the skill or experience of an attorney, however, the
> defendant must be made aware of the dangers and disadvantages of
> self-representation in order to competently and intelligently make the choice.  Texas
> adheres to the same type of analysis in determining whether a criminal defendant has
> properly waived his right to counsel.  Additionally, the record should demonstrate
> that the defendant was not coerced for there to have been a voluntary waiver of the
> right to an attorney.
>
> There is no courtroom script or formula for the trial judge to recite when a criminal
> defendant requests to represent himself.  The trial judge cannot sit idly by when a
> criminal defendant requests to represent himself, rather, the trial judge must actively
> participate in assessing the defendant's waiver of counsel.  We must review the
> entire record and the totality of the circumstances to ascertain if the criminal
> defendant's waiver of his right to counsel was properly made.
>
> In the case before this Court, the trial judge initially inquired about [petitioner's]
> education.  [Petitioner] advised that although he only went to the 11th grade in
> school, he had completed his GED.  Further, [petitioner] advised he had obtained
> further technical education while in prison.  The trial court went to great lengths to
> admonish [petitioner] about the dangers of self-representation.  In fact, the record
> affirmatively reflects that the trial court attempted to talk [petitioner] out of the
> decision to represent himself.  Under such a scenario, we cannot say that [petitioner]
> did not effectively waive his right to counsel.

Regarding petitioner's claim that he was denied counsel, the appellate court held:

> [Petitioner]'s second issue seems to contend that the trial court erred by not allowing
> both appointed counsel and [petitioner] to conduct the initial voir dire, opening
> statement, and cross-examination of the first witness.  To support this proposition,

> [petitioner] cites the Court to the Texas Constitution and the Texas Code of Criminal
> Procedure.  However, [petitioner's] analysis of the constitutional and statutory
> provisions ignores a long standing holding by the Texas Court of Criminal Appeals
> that an [petitioner] has no right to hybrid representation.  The right to be "heard by
> himself, or counsel, or both" that [petitioner] contends means he could have a form
> of hybrid representation has been construed by the Texas Court of Criminal Appeals
> to mean the right to present his side of the story, but not to hybrid representation.
> [Petitioner] has not furnished this Court with any authority to allow the type of
> hybrid representation discussed in his second issue and we have found none.

*Diaz v. State*, No. 07-07-0438-CR (citations omitted).

Petitioner sought review of the state appellate court's decision by filing a petition for

discretionary review.  The Texas Court of Criminal refused the petition for discretionary review on

August 19, 2009, and rehearing was denied.  *Diaz v. State*, P.D.R. No. 320-09.  Petitioner sought

review of this denial by filing a petition for a writ of certiorari.  The United States Supreme Court

denied the petition on January 19, 2010, and rehearing was denied.

Petitioner alleges that on April 5, 2010, he requested the court of appeals allow him to check

out the record on file in that court in order to prepare a petition for state habeas corpus relief.

Petitioner contends such request was denied on April 15, 2010.  On April 26, 2010, petitioner filed

a request with the state trial court requesting to check out the record to prepare his state habeas

application.  On July 13, 2010, the state trial court denied petitioner's request.  Petitioner

challenged the state court denial of his record request through a civil appeal and a petition for

discretionary review, both of which denied relief.  On January 19, 2010, the United States Supreme

Court denied petitioner's petition for certiorari, with a motion for rehearing being denied March 29,

2010.

On January 12, 2011, petitioner filed the instant federal habeas application.  On September

12, 2011, respondent filed an answer arguing petitioner's application should be denied as his claims

are either without merit or not cognizable.  On October 20, 2011, petitioner filed a reply in opposition to respondent's answer.


II.
PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

1.      Petitioner did not voluntarily waive his right to assistance of counsel at trial;

2.      Petitioner was denied his right to hybrid representation at trial; and

3.      Petitioner is being denied his right to seek state habeas corpus relief because the state habeas court is not allowing him to "check out" the trial court record.

In ground three, petitioner asserts he could not seek habeas corpus relief in state court asserting a ground of ineffective assistance of counsel without first obtaining a copy of the record and, consequently, has not raised such issue in his federal petition.  Through various motions, petitioner has requested this Court order the state courts to provide petitioner with a copy of the record in order that he might present and exhaust his ineffective assistance of counsel claims in the state courts.  Petitioner's motions have been denied.


III.
MERITS

In his answer, respondent has fully and accurately briefed the following:

1.      The appropriate standard of review under the AEDPA for consideration of the state court's determinations as to the merits of grounds 1 and 2 of petitioner's application.

2.      The appropriate burden of proof on petitioner under the AEDPA, as well as the appropriate burden of rebuttal by petitioner regarding factual findings by the state court.

3.      The absence of a federal constitutional right to hybrid representation.

4.      The unavailability of federal habeas corpus relief as a result of perceived infirmities in state habeas corpus proceedings rather than as a challenge to the constitutionality of the detention itself.

After a thorough discussion of the facts of this case, and in light of plaintiff's burden of proof and

the AEDPA standard of review, respondent concludes:

1.      Petitioner has failed to meet his burden of proving the unreasonableness of the state appellate court's denial of his claim that he did not voluntarily waive his right to counsel;

2.      Petitioner has failed to meet his burden of proving the unreasonableness of the state appellate court's denial of his claim that he was denied a right to hybrid representation; and

3.      Petitioner cannot challenge perceived infirmities in the state court habeas proceedings in federal habeas corpus proceedings because such a challenge does not attack the constitutionality of his detention itself.

In his reply to respondent's answer, petitioner argues:

1.      Fair minded jurists would find the state appellate court's decision was based on an unreasonable determination of the facts in light of the record, undermining any confidence in the state appellate court's decision and rendering it unreliable;

2.      The state appellate court ruling departed from the standards governing self-representation, set forth in *Faretta v. California*, 422 U.S. 806 (1975), to such a degree as to render such decision contrary to Supreme Court precedent;

3.      Petitioner's choice to represent himself was a product of coercion, *to wit*: defense counsel's unpreparedness for trial;

4.      Petitioner's attempt at self-representation was sabotaged by the trial court and by the prosecution;

5.      Petitioner's claim that his waiver of counsel was involuntary due to defense counsel's unpreparedness is not unexhausted or procedurally barred because petitioner could not raise counsel's unpreparedness on direct appeal; and

6.      The State and the trial court have substantially interfered with petitioner's efforts to withdraw the trial record so that petitioner could raise ineffective assistance of counsel claims in a state habeas corpus proceeding.

After review of the pleadings on file, as well as the state court opinions and records of proceedings, the undersigned finds petitioner has completely failed to explain, much less meet his burden of proving, the unreasonableness of the state appellate court's denial of his claim that he did not voluntarily waive his right to counsel for the initial part of the trial. Petitioner's boilerplate arguments to the contrary are without merit. Petitioner does not specify how the appellate court's determination of the facts was unreasonable or how the court's ruling was contrary to existing Supreme Court law or unreasonably applied such precedent. Nor does the undersigned's review of the record and the Supreme Court case law reveal any unreasonableness of the appellate court's decision.

As noted by the state appellate court, the trial judge "went to great lengths" in admonishing petitioner about the impracticality and pitfalls for self-representation. The record does, in fact, reflect the trial court attempted to persuade petitioner not to represent himself. The trial court complied with the dictates of *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525 (1975) in admonishing petitioner of the dangers and disadvantages of self-representation. Petitioner's waiver to his right to counsel at the beginning of the trial was voluntary.

The undersigned also finds petitioner has failed to meet his burden of proving the unreasonableness of the state appellate court's denial of his second claim, to wit: that he was denied a right to hybrid representation. Although a defendant possesses the right to counsel as well as the right to self-representation, there is no federal constitutional right to have both through a "hybrid representation" scheme, *i.e.*, representation partly by counsel and partly by the defendant himself. *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944 (1983). Petitioner's first and second grounds should be DENIED.

By his third ground, petitioner complains of the state courts' actions in post-direct appeal, collateral proceedings. Ground 3 is not cognizable in a federal habeas corpus proceeding. A challenge to possible infirmities in a state habeas corpus proceeding or to actions of the state courts prior to initiating a state habeas corpus proceeding is not a direct challenge to the constitutionality of petitioner's detention itself for violations of rights conferred by the United States Constitution. The grant of federal habeas corpus relief sought pursuant to this ground, *i.e.*, a copy of the trial record or permission to "check out" the record, would not automatically entitle petitioner to an immediate or speedier release from his current detention. Moreover, as noted in this Court's orders denying petitioner's requests for copies of the record, the claims of ineffectiveness petitioner wishes to raise in state habeas proceedings[4] could have been raised in such proceedings without petitioner's review of the record and will not be proved or disproved by the record itself. Petitioner's third ground is inappropriate in a federal habeas corpus proceeding and should be DENIED.

This Court does not reach the merits of what appears to be petitioner's primary argument underlying all of his claims: that trial counsel was not adequately prepared for trial. Any claims of ineffective assistance of counsel on this basis are unexhausted, procedurally barred and not fully briefed. Although petitioner maintains he could not have argued ineffective assistance of counsel on direct appeal and thus such a claim is not unexhausted or procedurally barred, such is not the state of the law in Texas. A defendant may raise such claims on direct appeal and "[i]n the rare case in which trial counsel's ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal." *Lopez v. State*, 343 S.W.3d 137, 143

---

[4]Petitioner wishes to assert trial counsel was ineffective because when trial was about to begin, counsel had not (1) viewed the video from the booking room, (2) interviewed witnesses petitioner alleged had sustained similar abuse from the jailer/victim, and (3) subpoenaed the jailer/victim's personnel record. At trial it was established there was no video of the booking room area, the witnesses petitioner submitted to counsel were no longer in the county jail, and trial counsel had faxed a subpoena for the personnel file of the jailer/victim to the sheriff and, although not received prior to voir dire, was produced prior to the defense's case at trial.

(Tex.Crim.App. 2011).  The Texas Court of Criminal Appeals noted:

> Allowing this disposition alleviates the unnecessary judicial redundancy and burden on the trial courts of holding additional hearings in writ applications when no additional evidence is necessary to the ultimate disposition of the case.  However, this is a difficult hurdle to overcome:  the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning."

*Id.* at 143 (footnotes omitted).  The Fifth Circuit has also noted Texas does not require a defendant to raise an ineffective assistance of trial counsel claim <u>only</u> in state habeas proceedings, and that ineffective assistance claims (particularly those involving trial counsel's failures to object) are often brought on direct appeal, with mixed success.  *Adams v. Thaler*, ___ F.3d ___, 2012 WL 1415094 (5th Cir. 2012).[5]  Petitioner's ability to raise such claims on direct appeal, regardless of the merits of such claims, renders petitioner's claims unexhausted.

Further, petitioner's argument that he could not raise his ineffective assistance of counsel claims without the trial court record is not persuasive.  If the claims of ineffective assistance of counsel were not adequately developed in the trial record, then petitioner, like almost all habeas petitioners, could have merely stated what he believed to be the bases of his claims in a state habeas petition.  If the claims were adequately developed in the trial record, they could have been presented on direct appeal as set forth previously.  For all of these reasons, this Court declines to address petitioner's underlying claim of counsel's unpreparedness for trial.

IV.
## RECOMMENDATION

For the reasons set forth in respondent's Answer filed September 12, 2011 [Document #12] and in this Report and Recommendation, it is the RECOMMENDATION of the United States

---

[5]It has yet to be determined whether *Martinez v. Ryan*, No. 10–1001, 2012 WL 912950 (Mar. 20, 2012) will apply to Texas cases at all, although the Court of Appeals, in an unpublished opinion, has held that the *Martinez* exception does not apply to Texas cases because such claims can be raised in the direct appeal.  *Gates v. Thaler*, 2012 WL 2305855 (5th Cir. 2012).

Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus

filed by petitioner MICHAEL ANTHONY DIAZ be DENIED.

V.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 27th day of June 2012.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).