IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MICHAEL ANTHONY DIAZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:11-CV-0012 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION**
**TO DENY SUPPLEMENTAL PETITION FOR A WRIT OF HABEAS CORPUS**

Came for consideration the Supplemental Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner MICHAEL ANTHONY DIAZ. By his supplemental habeas application, petitioner challenges his October 11, 2007 conviction for the offense of assault on a public servant out of the 222nd Judicial District Court of Deaf Smith County, Texas, and the resultant 25-year sentence. For the reasons set forth below, the United States Magistrate Judge is of the opinion petitioner is not entitled to federal habeas corpus relief.

I.
PROCEDURAL HISTORY

On May 29, 2007, petitioner was arrested for the offense of public intoxication. While being processed into jail, he hit a jailer. As a result, petitioner was indicted on June 27, 2007 for the felony offense of assault on a public servant, *to wit:*

Defendant . . . did then and there intentionally, knowingly, or recklessly cause bodily

injury to Aurelio Nunez by striking Aurelio Nunez, and the defendant did then and there know that the said Aurelio Nunez was then and there a public servant, to-wit: jailer, and that the said Aurelio Nunez was then and there lawfully discharging an official duty, to-wit: processing the defendant in the Deaf Smith County Jail.

Two (2) enhancement paragraphs were included in the indictment for purposes of enhancing petitioner's range of punishment to a minimum of twenty-five years.[1]

On July 3, 2007, attorney Ron Spriggs was appointed to represent petitioner in the assault case. Trial counsel filed multiple pre-trial motions on petitioner's behalf, including a motion to disqualify the state trial judge. After a 2-day hearing, the motion to recuse was denied and the matter was set for trial October 9. 2007.

> During a pre-trial hearing on October 5, 2007, [petitioner], for the first time, requested that the trial court relieve his appointed attorney. During a colloquy with the court regarding the dismissal of trial counsel, [petitioner] stated that he had no legal training, though he had studied law a little while in prison. Ultimately, [petitioner] stated to the trial court that he could not represent himself and the issue of dismissing appellant's trial counsel was resolved.
>
> On October the 9th, immediately before jury selection was scheduled to begin, [petitioner] again asked to dismiss his trial counsel, however, this time [petitioner] opined that he could represent himself. During the colloquy that followed, the trial court inquired about the extent of [petitioner's] formal education. [Petitioner] replied that he went to the 11th grade in school but had completed his GED while in prison. Further, [petitioner] stated that he studied at Lee College while in prison and was a certified HVAC technician. [Petitioner] then professed that he knew he was not a paralegal but that he felt he could represent himself better on this case because he knew what happened. The trial court continued the inquiry by asking [petitioner] if he knew anything about jury voir dire. [Petitioner] responded that he would talk to the jury about where they worked, if they were prejudiced, and if they had ever served on a jury. The trial court then advised [petitioner] that there were a number of procedures that would come into play during the trial, such as opening statements, cross-examination of witnesses, and the rules of evidence. The trial court advised [petitioner] that these procedural and evidentiary matters take years to master and that he would be at a severe disadvantage. During this admonition, the trial court advised that he had seen a number of defendants try to represent themselves and, in every case, self-representation turned out to be a disaster for the defendant. Yet,

---

[1] The enhancement paragraphs consisted of a 1987 conviction for the felony offense of burglary of a building, and a conviction for felony DWI.

[petitioner] continued to insist on the right to represent himself. Finally, the trial court continued to point out the danger of self-representation and the fact that [petitioner] would have to be held to the same standard that a licensed attorney was held to. The trial court stated that the court could not assist [petitioner] and that he would have to make his own objections and decisions. [Petitioner] still insisted on representing himself. Toward the conclusion of the hearing on [petitioner's] right to self-representation, [petitioner] appeared to ask to have his appointed lawyer start the case and, if [petitioner] did not like the job the appointed lawyer was doing, [petitioner] could take over the representation. The trial court advised [petitioner] that the court could not permit a hybrid representation. The [petitioner] then stated he was going to represent himself.

The trial court advised he would permit appointed counsel to sit at counsel table as standby attorney, however, he would not be allowed to participate as long as [petitioner] insisted on representing himself. The jury panel was brought in and voir dire was conducted with [petitioner] conducting his own voir dire. Opening statements were made with [petitioner] again representing himself during this portion of the trial. After the State's first witness completed direct examination, [petitioner] attempted to cross-examine the witness, but drew numerous objections from the State. At this time, [petitioner] requested the trial court to allow standby counsel to take over the representation. The trial court permitted standby counsel to assume the representation, but admonished [petitioner] that there was to be no further switching back to self-representation.[2]

On October 11, 2007, the jury found petitioner guilty of the offense as alleged in the indictment, found both enhancement paragraphs were true, and assessed petitioner the minimum 25-year sentence.[3]

Petitioner, through the same appointed counsel, directly appealed his conviction and sentence. On appeal, petitioner alleged 1) he did not effectively waive his constitutional right to counsel, and 2) that the trial court's refusal to allow both he and his counsel to be heard denied him his right to assistance of counsel. On December 29, 2008, the state appellate court affirmed petitioner's conviction and sentence. Regarding petitioner's waiver of counsel, the appellate court held:

---

[2]*Diaz v. State*, No. 07-07-0438-CR, slip op. (Tex.App.–Amarillo 2008, pet ref'd).

[3]At both the guilt/innocence and punishment stages of the trial, the jury advised the trial court they were deadlocked and could not make a decision. The jury reached a verdict on guilt and sentencing only after being administered "*Allen* charges."

> [Petitioner] contends that the trial court erred in allowing appellant to begin the case representing himself. The essence of [petitioner's] argument is that the trial court did not properly admonish [petitioner] about the dangers of self-representation and, therefore, [petitioner] did not effectively waive his right to counsel.
>
> Initially, we observe that a criminal defendant has a constitutional right to represent himself at trial. However, before allowing a criminal defendant to represent himself, the trial court must take certain steps to ensure that the defendant's decision is made 1) competently, 2) knowingly and intelligently, and 3) voluntarily. The law does not require that the defendant have the skill or experience of an attorney, however, the defendant must be made aware of the dangers and disadvantages of self-representation in order to competently and intelligently make the choice. Texas adheres to the same type of analysis in determining whether a criminal defendant has properly waived his right to counsel. Additionally, the record should demonstrate that the defendant was not coerced for there to have been a voluntary waiver of the right to an attorney.
>
> There is no courtroom script or formula for the trial judge to recite when a criminal defendant requests to represent himself. The trial judge cannot sit idly by when a criminal defendant requests to represent himself, rather, the trial judge must actively participate in assessing the defendant's waiver of counsel. We must review the entire record and the totality of the circumstances to ascertain if the criminal defendant's waiver of his right to counsel was properly made.
>
> In the case before this Court, the trial judge initially inquired about [petitioner's] education. [Petitioner] advised that although he only went to the 11th grade in school, he had completed his GED. Further, [petitioner] advised he had obtained further technical education while in prison. The trial court went to great lengths to admonish [petitioner] about the dangers of self-representation. In fact, the record affirmatively reflects that the trial court attempted to talk [petitioner] out of the decision to represent himself. Under such a scenario, we cannot say that [petitioner] did not effectively waive his right to counsel.

Regarding petitioner's claim that he was denied counsel, the appellate court held:

> [Petitioner]'s second issue seems to contend that the trial court erred by not allowing both appointed counsel and [petitioner] to conduct the initial voir dire, opening statement, and cross-examination of the first witness. To support this proposition, [petitioner] cites the Court to the Texas Constitution and the Texas Code of Criminal Procedure. However, [petitioner]'s analysis of the constitutional and statutory provisions ignores a long standing holding by the Texas Court of Criminal Appeals that an [petitioner] has no right to hybrid representation. The right to be "heard by himself, or counsel, or both" that [petitioner] contends means he could have a form of hybrid representation has been construed by the Texas Court of Criminal Appeals to mean the right to present his side of the story, but not to hybrid representation.

> [Petitioner] has not furnished this Court with any authority to allow the type of hybrid representation discussed in his second issue and we have found none.

*Diaz v. State*, No. 07-07-0438-CR (citations omitted).

Petitioner sought review of the state appellate court's decision by filing a petition for discretionary review. The Texas Court of Criminal Appeals refused the petition for discretionary review on August 19, 2009, and rehearing was denied. *Diaz v. State*, P.D.R. No. 320-09. Petitioner sought review of this denial by filing a petition for a writ of certiorari. The United States Supreme Court denied the petition on January 19, 2010, and rehearing was denied.

Petitioner alleges that on April 5, 2010, he requested the court of appeals allow him to check out the record on file in that court in order to prepare a petition for state habeas corpus relief. Petitioner contends such request was denied on April 15, 2010. On April 26, 2010, petitioner filed a request with the state trial court requesting to check out the record to prepare his state habeas application. On July 13, 2010, the state trial court denied petitioner's request. Petitioner challenged the state court denial of his record request through a civil appeal and a petition for discretionary review, both of which denied him relief. On January 19, 2010, the United States Supreme Court denied petitioner's petition for certiorari, with a motion for rehearing being denied March 29, 2010.

On January 12, 2011, petitioner filed a federal habeas application. On June 27, 2012, the undersigned entered a Report and Recommendation (R&R) recommending petitioner's application be denied as his claims were either without merit or not cognizable. In the R&R, this Court declined to reach the merits of what appeared to be petitioner's primary argument, *i.e.*, that trial counsel was not adequately prepared for trial, as any claims of ineffective assistance of counsel were unexhausted, procedurally barred or not fully briefed.

On July 12, 2012, petitioner filed a state habeas application alleging ineffective assistance of trial and appellate counsel. On September 5, 2012, trial/appellate counsel filed a sworn affidavit with the state habeas trial court addressing petitioner's allegations. On September 26, 2012, petitioner filed objections to counsel's affidavit. On October 10, 2012, the state trial court entered Findings of Fact and Conclusions of Law. On December 19, 2012, the Texas Court of Criminal Appeals denied petitioner's state habeas application without written order based on the findings of the trial court without a hearing. *In re Diaz*, No. 57,137-02.

On March 21, 2013, petitioner filed a supplemental petition for federal habeas relief. On March 25, 2013, the United States District Judge adopted the Report and Recommendation and denied relief as to all grounds raised in the original petition. On April 22, 2013, respondent filed an answer to petitioner's supplemental petition. On May 23, 2013, petitioner filed a reply in opposition to respondent's answer.

II.
PETITIONER'S ALLEGATIONS

By his supplemental application, petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

A. Petitioner was denied effective assistance of counsel at trial because counsel:

    1. Failed to conduct any pre-trial investigation, including interviewing witnesses or investigating the video camera in the booking room;

    2. Failed to subpoena witnesses, which denied petitioner the right to call witnesses;

    3. Failed to request jailer's personnel file until the first day of trial and failed to seek admission of the jailer's disciplinary file at trial;

    4. Failed to explain waiver of arraignment to petitioner;

    5. Did not tell petitioner there was no film in the video camera

    until the first day of trial;

  6. Did not tell petitioner he could not subpoena all of his requested witnesses until the first day of trial;

  7. Did not tell petitioner of a 12-year plea offer made by the State prior to trial;

  8. Failed to prepare for trial which caused petitioner to have to represent himself;

  9. Only met with petitioner once at the jail and once by phone prior to trial.

  10. Had a conflict of interest because he socialized with the trial judge; and

  11. Has a history of other complaints filed against him.

B. Petitioner was denied effective assistance of appellate counsel because counsel failed to raise the following issues on appeal:

  1. Abuse of the court's discretion in denying admission of the jailer's personnel file;

  2. The absence of a tape in the video camera;

  3. Ineffective assistance of trial counsel for failing to object to the second *Allen* charge; and

  4. Any ineffective assistance of trial counsel claims.

C. Petitioner was denied hybrid representation; and

D. The state habeas court impeded petitioner's right to review by refusing to allow him to withdraw the record.

### III.
### EXHAUSTION/ PROCEDURAL BAR

Petitioner did not present a number of claims to the state courts for their initial determination, to-wit:

      A.      Petitioner was denied effective assistance of counsel at trial because counsel:

            7.      Did not tell petitioner of a 12-year plea offer made by the State prior to trial;

            10.     Had a conflict of interest because he socialized with the trial judge; and

            11.     Has a history of other complaints filed against him.

      B.      Counsel was ineffective on appeal because he failed to raise the following issues in his appellate brief:

            1.      Abuse of the court's discretion in denying admission of the jailer's personnel file;

            2.      The absence of a tape in the video camera; and

            3.      Ineffective assistance of trial counsel for failing to object to the second *Allen* charge.

Because the above claims are presented for the first time in this supplemental petition, they are unexhausted and procedurally barred, and the undersigned will not address the merits of such claims in this Report and Recommendation.

## IV.
## MERITS

After review of the pleadings on file, as well as the state court opinions and records of proceedings, the undersigned finds petitioner has completely failed to explain, much less meet his burden of proving, the unreasonableness of the state habeas court's denial of his claims that he was denied theeffective assistance of trial or appellate counsel. Petitioner's boilerplate arguments to the contrary are without merit. Petitioner does not specify how the state habeas court's determination of the facts was unreasonable or how its ruling was contrary to existing Supreme Court law or how the court unreasonably applied such precedent. Nor does the undersigned's review of the record reveal any unreasonableness of the habeas court's decision to deny relief. Petitioner's supplemental

claims should be denied for failing to meet this necessary threshold. Even so, petitioner's exhausted grounds have been addressed below.

### A.  Effectiveness of Counsel

In order to obtain habeas corpus relief on the ground of ineffective assistance of counsel, a petitioner must demonstrate not only that his counsel's performance was deficient, but must also show the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To demonstrate deficiency, the petitioner must show counsel's actions "fell below an objective standard of reasonableness." *Id*. at 668, 104 S.Ct. at 2064. However, a strong presumption exists "that trial counsel rendered adequate assistance and that the challenged conduct was reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066). Strategic choices made after a thorough investigation of both the law and facts are "virtually unchallengeable." *Strickland*, 466 U.S. at 690-91. To demonstrate prejudice, a petitioner must show that a "reasonable probability" exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S.__, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011); *see also Cullen v. Pinholster*, 563 U.S.__, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011). If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069.

When a state prisoner asks a federal court to set aside a conviction or sentence due to ineffective assistance of counsel, the federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law, and

presumes defense counsel's performance fell within the bounds of reasonableness. *Burt v. Titlow,* __ U.S.___, 134 S.Ct. 10, 2013 WL 5904117 (Nov. 5, 2013). The absence of evidence cannot overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" and cannot establish that performance was deficient. *Id*. (quoting *Srickland*, *supra).*

### 1. *Failure to Investigate*

The Sixth Amendment requires counsel "to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997). Strategic choices made after a thorough investigation of both the law and facts are "virtually unchallengeable." *Strickland*, 466 U.S. at 690-91. Even strategic choices made after a less than complete investigation are "reasonable" to the extent that reasonable professional judgments support the limitations on investigation. In determining the reasonableness of an attorney's investigation, this court must directly assess a particular decision not to investigate "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* The court must also consider not only the evidence already known to counsel, but whether such evidence would lead reasonable counsel to investigate further. *Wiggins v. Smith,* 123 S.Ct. 2527, 2538 (2003). The reasonableness of an investigation depends in large part on the information supplied by the defendant. *See Ransom*, 126 F.3d at 123. Counsel should, at a minimum, interview potential witnesses and independently investigate the facts and circumstances of the case. *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). Even so, counsel is not required to investigate everyone mentioned by the defendant." *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985). A defendant who alleges counsel was deficient for failing to investigate "must allege with specificity what the investigation would have revealed and how it would have altered the outcome

of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

By his first ground, petitioner claims trial counsel "conducted no pre-trial investigation into the facts of the case nor did he conduct a reasonable investigation concerning the video camera in the booking room." In the affidavit filed with the state habeas court, counsel averred the district attorney had an open file policy and that he reviewed all of the evidence against petitioner on July 19, 2007, discovering there was not a recording of the alleged incident. Petitioner fails to identify what beneficial facts or evidence (mitigating or otherwise) counsel would have discovered through a more extensive pre-trial investigation.[4] Nor does petitioner identify with specificity any additional defense he contends counsel could have then made to the charges against petitioner if counsel had conducted additional investigation. Petitioner's speculative, unsupported and conclusory assertions fall far short of the level required for a claim of ineffective assistance on federal habeas corpus relief to succeed. Further, petitioner fails to show how additional investigation would have impacted or altered the outcome of his trial. This claim should be DENIED.

### 2. *Failure to Interview, Subpoena or Call Witnesses*

Petitioner claims trial counsel was ineffective because he failed to interview, subpoena or call witnesses petitioner supplied him "well in advance of trial who were similarly abused by the same jailer." A petitioner seeking to show ineffective assistance of counsel for failing to call a witness must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony

---

[4]In his reply, petitioner makes the conclusory allegation that the purported price of the video system in the jail indicates the camera had the capability to record, and asserts counsel should have further investigated the camera through inquiry to the manufacturer to confirm this capability. Petitioner also asserts counsel should have further investigated the existence of a tape instead of simply taking the prosecution and jail's word that there was no recording of the incident. Petitioner does not present what argument counsel should have made to rebut and/or challenge the representation no recording existed.

would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). "Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Lockhard v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).

> In his affidavit in the state habeas proceedings, counsel averred:
>
> In the courtroom on the morning of trial, [petitioner] presented me with a list of about 15 to 20 people he wanted subpoenaed to court that morning. [Petitioner] could not explain to me how these people could help. These people had no factual knowledge of the case. Without justification, subpoenaing these people would have exposed me to sanctions from the court and the State Bar because I believe it would have been abusive use of the subpoena power. When I refused to subpoena these people, [petitioner] decided to defend himself.

Petitioner fails to offer anything beyond his own conclusory statements as to whether these witnesses, who were not identified in his supplemental federal habeas application, would have testified and what their statements and/or testimony would have been.[5] Petitioner's unsupported assertions fall far short of the level of proof required for federal habeas corpus relief. The Court notes trial counsel did call one Cody Morgan, an inmate in the Deaf Smith County Jail, to testify out of the presence of the jury about problems he had with the victim jailer. The trial court found such testimony inadmissible. Petitioner has failed to show how any similar testimony from additional witnesses would not also have been ruled inadmissible. Lastly, petitioner fails to show how the testimony of such witnesses, even if admitted, would have impacted the outcome of his trial, *i.e.*, he has not shown the result of the proceeding would have been different. Petitioner's

---

[5]In his reply petitioner provides three (3) names and contends witness #1 would have stated the jailer had "instigated trouble" with him in the booking room, witness #2 would have stated he was threatened by the jailer in the holding tank regarding a purported relationship between witness #2 and the jailer's wife, and witness #3 would have stated the jailer asked him to assault witness #2. These witnesses were identified in petitioner's supporting memorandum to his state habeas application.

challenge to his attorney's failure to subpoena and/or call these witnesses is meritless and should be DENIED.

### 3. *Jailer's Disciplinary File*

Petitioner claims trial counsel was deficient because he did not request to review the personnel file of the victim jailer until the day of trial, failed to seek admission of the jailer's disciplinary file at trial, and made no request or motion for the jury to examine the file. Petitioner has not demonstrated how the timing of the request for the jailer's personnel file was deficient or how petitioner was prejudiced by the timing of the request. Moreover, trial counsel did offer portions of the jailer's file into evidence but the trial court sustained the State's objection to each document offered. Trial counsel thereafter made an offer of proof of each of the four documents from the jailer's personnel file. Without the admission of the file into evidence, trial counsel could not make a "request or motion" for the jury to examine the file. This ground is without merit and should be DENIED.

### 4. *Communication with Petitioner*

Petitioner claims trial counsel was deficient because he failed to explain the "Waiver of Arraignment" to petitioner, instead, claiming he simply received it in the mail and signed it without explanation. In his affidavit, counsel averred he explained arraignment to petitioner and he decided to waive it. This dispute notwithstanding, petitioner cannot demonstrate any prejudice and this claim should be DENIED.

Petitioner contends counsel was deficient because he did not tell petitioner there was no film in the booking room video camera until the day of trial. In his affidavit, trial counsel averred he told petitioner before trial that although the offense was alleged to have occurred in the booking room of the jail, there was no video recording of the incident. Moreover, the record of the October

5, 2007 pretrial hearing reflects trial counsel's statement that he had asked the District Attorney and "some of the jailers" if the incident had been recorded and had been told there was "no such system that is recording as a surveillance system." Petitioner was present at the hearing when this statement was made. Not only are petitioner's allegations meritless, petitioner has not demonstrated counsel was deficient nor has he established any prejudice as a result of counsel's actions. Petitioner's claims should be DENIED.

Petitioner contends that prior to trial, he presented counsel with a list of witnesses he wanted subpoenaed for trial. (Petitioner's claim of ineffective assistance for uncalled witnesses was addressed above). Petitioner contends counsel's performance was deficient because counsel did not tell petitioner, until the first day of trial, that he could not subpoena all of his requested witnesses. In his affidavit, trial counsel avers, under oath, that petitioner did not advise him of requested witnesses until the day of trial when he provided a list of 15 to 20 people he wanted subpoenaed. Counsel avows petitioner could not explain how those people could help, and that the people had no factual knowledge of the case. The state habeas court, by denying relief, found counsel's sworn affidavit credible. Petitioner has not shown counsel was deficient for not advising him until the day of trial that witnesses had not been subpoenaed.

Petitioner next argues trial counsel was deficient because he only met with petitioner once at the jail and once by phone prior to trial. "[B]revity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel." *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir.1984) (*citing Jones v. Wainwright*, 604 F.2d 414, 416 (5th Cir.1979)). Even so, in his affidavit, trial counsel averred under oath that he met with petitioner in person and spoke to him many times over the phone. Furthermore, petitioner has not shown what benefit he would have gained by demonstrating what "additional evidence could have been produced had additional conversations taken place." *See id.* at 283. Petitioner has not shown how additional

meeting time between he and his counsel would have benefitted petitioner. This claim should be DENIED.

### 5. *Preparation for Trial*

Petitioner claims trial counsel was deficient because he failed to prepare for trial which caused petitioner to have to represent himself. Petitioner's claim appears to be based solely on the alleged deficient pre-trial investigation. That issue has been addressed above. Petitioner has not demonstrated counsel was not prepared and ready for trial. This claim should be DENIED.

### 6. *Appellate Counsel*

Petitioner claims appellate counsel (who also served as trial counsel) was ineffective because he failed to raise any grounds of error on appeal regarding his own ineffective assistance at trial. As discussed above, petitioner's claims of ineffective assistance of *trial* counsel are without merit. Even so, petitioner was able to present his ineffective assistance of *trial* counsel claims to the state courts during state habeas corpus proceedings. Further, appellate counsel, in his affidavit, explained he did not raise ineffective assistance claims on appeal because there was no basis for such claims. Petitioner has failed to demonstrate "there is a reasonable probability that, but for [appellate] counse's unprofessional errors, the result of the [appeal] would have been different." *See Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir. 1991). This claim should be DENIED.

### B. Hybrid Representation/ Withdrawal of Record

These claims were denied in the previous R&R and will not be addressed further except to say that such claims have now been denied in the state habeas corpus proceedings and petitioner has failed to meet his burden of proving the unreasonableness of the state courts' denial. These claims should be DENIED.

IV.
RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the supplemental petition for a writ of habeas corpus filed by petitioner MICHAEL ANTHONY DIAZ be DENIED.

V.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this  3rd  day of March 2014.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

* **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services*

*Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).